THE HONORABLE RICHARD A. JONES

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9
10

HARJOT BAJWA, on his own behalf and on
behalf of others similarly situated,

Case No. 2:25-cv-02280-RAJ

11

                                    Plaintiff,

**DEFENDANT'S MOTION TO
DISMISS**

12

        v.

**NOTE ON MOTION CALENDAR:
December 19, 2025**

13
14

NATIONAL AUTOMOTIVE PARTS
ASSOCIATION, LLC,

**ORAL ARGUMENT REQUESTED**

15

                                    Defendant.

16

## I.    INTRODUCTION AND RELIEF REQUESTED

17
18

        Plaintiff Harjot Bajwa's Complaint should be dismissed.  Plaintiff asserts putative class

19

action claims against National Automotive Parts Association, LLC ("NAPA") under Washington's

20

Consumer Electronic Mail Act ("CEMA"), RCW 19.190.020(1)(b), and the Consumer Protection

21

Act ("CPA"), RCW 19.86.020, based on allegedly misleading email subject lines in promotions

22

purportedly sent by or on behalf of NAPA. However, Plaintiff's claims are expressly preempted

23

by the federal CAN-SPAM Act. The *only* claims saved from preemption are traditional tort claims

24

sounding in fraud. Plaintiff pleads no such claim. Notably, Plaintiff does not allege that NAPA's

25

allegedly misleading subject lines were material to any decision he made. Nor does he allege that

26

he made any purchases based on NAPA's email promotions, nor that he relied upon NAPA's

27

emails in any way whatsoever. Nevertheless, Plaintiff seeks to represent a class of "minimally"

"thousands" of Washington residents in seeking millions of dollars in damages from NAPA on a tortured theory of strict liability. Plaintiff's ambition is misplaced.

First, Plaintiff is the master of his own complaint, and the CEMA claim he alleges is pre-empted by the CAN-SPAM Act, which expressly "regulates the use of electronic mail to send commercial messages" and therefore displaces state law statutes which purport to do the same. 15 U.S.C. § 7707(b)(1). CAN-SPAM preemption is not absolute – states are free to extend their traditional tort theories to commercial emails for claims *of fraud and deception* via statutes like CEMA. But Plaintiff's claims against NAPA do not fall into this reservoir. Plaintiff does not even attempt to plead a tort claim, and the Complaint contains no allegations that: (1) NAPA's email subject lines were materially false; (2) he relied upon NAPA's alleged misrepresentations; (3) NAPA knew its email subject lines were false when they were sent; or (4) he suffered any harm from NAPA's alleged misrepresentations. Nor, to be sure, does he plead his CEMA or CPA claims for fraud with the requisite particularity pursuant to Federal Rule of Civil Procedure 9(b). Accordingly, Plaintiff's claims are not cognizable under the "exception" to CAN-SPAM preemption; they are squarely preempted by CAN-SPAM and must be dismissed as a matter of law. Because Plaintiff's CEMA claim fails, his CPA claim premised on violations of CEMA likewise must be dismissed.

Second, even if Plaintiff's claims were not preempted by CAN-SPAM (they are), Plaintiff does not plausibly allege that NAPA had knowledge, constructive or actual, of his status as a Washington resident. Rather, the Complaint nakedly speculates that NAPA *could have* used some unspecified combination of technological tools to ascertain Plaintiff's residence. He further vaguely alludes to a "conspiracy" but fails to identify who NAPA purportedly conspired with. These failures render Plaintiff's Complaint insufficient to state a claim.

Third, and finally, Plaintiff's theory of CEMA liability here would result in an unconstitutional application of the law. Plaintiff seeks tens of millions of dollars in statutory damages on a strict liability theory with zero allegations of harm. Such an application of the law would raise serious due process concerns. Plaintiff's Complaint should therefore be dismissed.

DEFENDANT'S MOTION TO DISMISS - 2
Case No. 2:25-cv-02280-RAJ

BALLARD SPAHR LLP
1301 SECOND AVE., SUITE 2800
SEATTLE, WASHINGTON 98101
206.223.7000 FAX: 206.223.7107

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed this case in King County Superior Court on October 13, 2025. Dkt. #1-1. Pursuant to the Class Action Fairness Act ("CAFA"), NAPA removed the case to this Court on November 14, 2025. Dkt. #1; 28 U.S.C. §§ 1332(d), 1446(d).

Plaintiff alleges that he received one email from NAPA, but little else. Dkt. #1-1 (Compl.) ¶ 110.  Nevertheless, Plaintiff purports to bring this action on behalf of a putative class of "minimally" "thousands" of Washington residents who received allegedly misleading emails from NAPA over the last four years. *Id.* ¶¶ 113–15, 117. Plaintiff seeks statutory damages of $500 per email, trebled, as well as costs and attorney's fees. *Id.* ¶ 140.

Plaintiff alleges that NAPA's marketing emails "make false time scarcity claims." *Id.* ¶ 41. Plaintiff identifies one email that he purportedly received, *id.* ¶ 110, yet he seeks to certify a class of individuals who received emails he doesn't even allege he personally received. He also fails to allege that he made any purchases from the promotions or relied on NAPA's representations in any way. He fails to allege that NAPA knew that the emails were false when they were sent or that he suffered any corresponding injury.

Plaintiff also fails to allege that NAPA has actual knowledge that its emails were received by Plaintiff, a resident of Washington, or that it knew the residences of each recipient of its promotional emails. Rather, the Complaint asserts six hypothetical mechanisms that NAPA *could* use to derive consumer residences, and concludes that it is "highly probable" that NAPA uses these tools and therefore knows the residencies of its email recipients. *Id.* ¶¶ 99–108. Plaintiff's theory of knowledge ranges from hypothetical contracts that NAPA could have with third-party data brokers or "identity resolution" services, to the availability of IP-address tracking tools. *Id.*

Despite Plaintiff's mere speculation and failure to assert *multiple* critical facts necessary to allege a viable claim, he seeks an astronomical amount of damages without having alleged any injury whatsoever.

DEFENDANT'S MOTION TO DISMISS - 3
Case No. 2:25-cv-02280-RAJ

BALLARD SPAHR LLP
1301 SECOND AVE., SUITE 2800
SEATTLE, WASHINGTON 98101
206.223.7000 FAX: 206.223.7107

1

## III.    ARGUMENT

2

### A.    Legal Standard

3    To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "sufficient

4    factual matter" to "state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S.

5    662, 678 (2009) (citations omitted), and "raise a right to relief above the speculative level[.]" *Bell*

6    *Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A complaint can be lacking for one of two

7    reasons: (i) absence of a cognizable legal theory, or (ii) insufficient facts under a cognizable legal

8    claim." *In re Hawaiian & Guamanian Cabotage Antitrust Litig.*, 754 F. Supp. 2d 1239, 1244 (W.D.

9    Wash. 2010), *aff'd*, 450 F. App'x 685 (9th Cir. 2011) (citing *Robertson v. Dean Witter Reynolds,*

10   *Inc.*, 749 F.2d 530, 534 (9th Cir. 1984)). The Court need not "accept as true allegations that are

11   merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v.*

12   *Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *amended on denial of reh'g*, 275 F.3d

13   1187 (9th Cir. 2001).

14   Furthermore, claims sounding in fraud must comport with Federal Rules of Civil Procedure

15   9(b)'s heightened pleading requirements. Rule 9(b) "requires more specificity," including the

16   "time, place, and specific content of the false representations as well as the identities of the parties

17   to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007).

18   ### B.    CAN-SPAM Preempts Plaintiff's CEMA Claim and Requires Dismissal.

19   The Supremacy Clause of the U.S. Constitution provides that "state laws that conflict with

20   federal law are without effect." *Altria Group, Inc. v. Good*, 555 U.S. 70, 76 (2008) (*citing* U.S.

21   Const. art. VI, cl. 2). Here, CAN-SPAM was passed by Congress with the express intention of

22   preempting state laws, like CEMA. As pled, Plaintiff's CEMA claim falls squarely within the

23   scope of CAN-SPAM preemption.

24   Along with countless other states seeking to regulate commercial email in its infancy, the

25   Washington legislature enacted CEMA in 1998 to impose liability for any "person" who

26   "initiate[d] the transmission, [or] conspire[d] with another to initiate the transmission, . . . of a

27   commercial electronic mail message from a computer located in Washington or to an electronic

DEFENDANT'S MOTION TO DISMISS - 4
Case No. 2:25-cv-02280-RAJ

BALLARD SPAHR LLP
1301 SECOND AVE., SUITE 2800
SEATTLE, WASHINGTON 98101
206.223.7000 FAX: 206.223.7107

mail address that the sender knows, or has reason to know, is held by a Washington resident that . . . [c]ontains false or misleading information in the subject line." RCW 19.190.020(1)(b).

CEMA does not provide for a private right of action by its own terms; rather violations of CEMA serve as *per se* predicates for a claim under Washington's Consumer Protection Act. *See* RCW 19.190.030(1), .100; RCW Ch. 19.86.

Five years after CEMA was passed, as a "patchwork" of state law regulatory regimes proliferated across the country and made nationwide compliance untenable for companies sending marketing emails, Congress saw fit to act. In enacting the CAN-SPAM Act, Congress provided a uniform standard for the regulation of commercial email. Congress struck a "careful balance between preserving a potentially useful commercial tool and preventing its abuse." *Omega World Travel, Inc. v. Mummagraphics, Inc*., 469 F.3d 348, 354 (4th Cir. 2006) ("*Omega*"); *see also Gordon v. Virtumundo, Inc*., 575 F.3d 1040, 1049 (9th Cir. 2009) (the purpose of the CAN-SPAM Act was not to stamp marketing emails out of existence, as Congress recognized "there are beneficial aspects to commercial e-mail, even bulk messaging, that Congress wanted to preserve, if not promote"). At a national level, CAN-SPAM provides an exhaustive array of defined terms, requirements, and a rubric for objections and remedies. 15 U.S.C. § 7704(a)-(d). Just like CEMA, CAN-SPAM prohibits commercial emails with subject headings that are "likely to mislead a recipient" about "a material fact regarding the contents or subject matter of the message," *id*. at (a)(2), and primarily charges government agencies with enforcing that uniform rule. 15 U.S.C. § 7706(b). But critically, private individuals like Plaintiff lack standing to pursue private actions for relief under CAN-SPAM. *Virtumundo*, 575 F.3d at 1049–50 (explaining the statutory requirements for "adverse effect," and concluding that plaintiff lacked standing to assert CAN-SPAM claim).

In constructing this balanced approach to email regulation across the nation, Congress provided an *express* preemption clause to displace state law regimes that would frustrate its goal in providing a national standard. Specifically, CAN-SPAM states that "[t]his chapter supersedes any statute, regulation, or rule of a State or political subdivision of a State that expressly regulates

DEFENDANT'S MOTION TO DISMISS - 5
Case No. 2:25-cv-02280-RAJ

BALLARD SPAHR LLP
1301 SECOND AVE., SUITE 2800
SEATTLE, WASHINGTON 98101
206.223.7000 FAX: 206.223.7107

the use of electronic mail to send commercial messages . . . ." 15 U.S.C. § 7707(b)(1). As both the Ninth and Fourth Circuits have now explained in detail, § 7707(b)(1) means what it says, and was included in CAN-SPAM to "broadly preempt state regulation of commercial e-mail with limited, narrow exception." *Virtumundo*, 575 F.3d at 1061 (*accord Omega*, 469 F.3d at 354).

### 1.    CAN-SPAM Exempts *Only* State Law Actions Based on Tort Theories of Deceit and Fraud.

The "limited, narrow exception" in CAN-SPAM provides an exemption for states to enforce a "statute, regulation, or rule prohibit[ing] *falsity* or *deception* in any portion of a commercial electronic mail message . . . ." 15 U.S.C. 7707(b)(1) (emphasis added). Pursuant to this exemption, only "traditionally tortious" theories of state law liability survive; all other theories of liability based on commercial email transmission are expressly preempted. As the Ninth Circuit explained, the statutory exemption in CAN-SPAM is doctrinally narrow:

> Reading 'falsity' in conjunction with 'deception,' which connotes a type of tort action based on misrepresentations, we are likewise persuaded that the exception language, read as Congress intended, refers to 'traditionally tortious or wrongful conduct.'

*Virtumundo, Inc.*, 575 F.3d at 1062 (citing *Omega*, 469 F.3d at 354). "We find further support for this reading in the statutory text, which counsels against any interpretation that preempts laws relating to 'acts of fraud.'" *Id*. Accordingly, only "tort action based on misrepresentations" survive preemption. *Id*. Any "contrary reading," the court reasoned, would "turn an exception to a preemption provision into a loophole so broad that it would virtually swallow the preemption clause itself." *Id*. at 1061 (citing *Omega*, 469 F.3d at 355). By fully embracing the Fourth Circuit's reasoning in *Omega*,[1] the Ninth Circuit expressly repudiated earlier district court decisions interpreting CAN-SPAM's exemption to be "not limited *just* to common-law fraud and other similar torts." *Asis Internet Servs. v. Consumerbargaingiveaways, LLC*, 622 F. Supp. 2d 935, 942

---

[1] The Ninth Circuit expressly signaled that it was relying on the Fourth Circuit's reasoning in *Omega* when interpreting the nature and scope of the CAN-SPAM exception found in § 7707(b)(1). *Virtumundo, Inc.*, 575 F.3d 1040, 1061 n.20 (9th Cir. 2009) ("Our reliance on *Omega* is limited to the Fourth Circuit's interpretation of the CAN-SPAM Act's preemption clause.").

DEFENDANT'S MOTION TO DISMISS - 6
Case No. 2:25-cv-02280-RAJ

BALLARD SPAHR LLP
1301 SECOND AVE., SUITE 2800
SEATTLE, WASHINGTON 98101
206.223.7000 FAX: 206.223.7107

(N.D. Cal. 2009) (emphasis in original); *see also, e.g.*, *Asis Internet Servs. v. Vistaprint USA, Inc.*, 617 F. Supp. 2d 989, 993 (N.D. Cal. 2009).

The only claims that *can* survive CAN-SPAM preemption are those that contain the traditional elements of common law fraud and deceit: *e.g.*, materiality, reliance, actual injury, and deceptive intent. *Omega*, 469 F.3d at 354 (citing Keeton et al., *Prosser and Keeton on the Law of Torts* § 105, at 726–27 (5th ed. 1984) (defining deceit as species of false-statement tort); *Restatement (Second) of Torts* § 525 (describing elements of deceit)). The Ninth Circuit emphasized that Congress's intent necessitates a materiality requirement for such claims. *Virtumundo*, 575 F.3d at 1061 ("a materiality component comported with the policy pursued by the federal legislation as a whole"); *id.* at 1062 (the "Committee's repeated references to 'fraud' and 'deception' is telling and confirms that Congress did not intend that states retain unfettered freedom to create liability for immaterial inaccuracies"); *id.* at 1065 (requiring misrepresentation of "something of material importance"). Tellingly, the Ninth Circuit anticipated, and delineated, the precise contours of claims under laws like CEMA. The court noted that "while a 'State law requiring some or all commercial e-mail to carry specific types of labels, or to follow a certain format or contain specified content, would be preempted[,] . . . *a State law prohibiting fraudulent or deceptive headers, subject lines, or content in commercial e-mail would not be preempted.*'" *Id.* at 1062 (citations omitted) (emphasis added).[2] To the extent that Plaintiff's CEMA claim does not fall into this category (and he does not even try to allege such a claim), it is squarely preempted by CAN-SPAM and must be dismissed with prejudice for lack of standing under CAN-SPAM. *Id.* at 1049–50 (explaining the statutory requirements for alleging an "adverse effect" and concluding that plaintiff lacked standing to assert CAN-SPAM claim).

---

[2] CAN-SPAM "left states room only to extend their traditional fraud prohibitions to the realm of commercial emails because it was confident that legitimate businesses would not unwittingly transgress such well-established prohibitions." CAN-SPAM Act left states room only to extend traditional fraud and deception prohibitions into cyberspace. *Kleffman v. Vonage Holdings Corp.*, No. CV 07-2406 GAF (JWJx), 2007 WL 1518650, at *1 (C.D. Cal. May 23, 2007) (cited approvingly by *Virtumundo*, 575 F.3d at 1040, 1064).

2.    **Plaintiff's CEMA Claim Does Not Fall Into the CAN-SPAM Exception.**

Plaintiff's strict liability theory of CEMA – seeking $500 per email, trebled, for an entire class of Washington consumers over four years without alleging any elements of fraud – is decidedly outside the limited exception to CAN-SPAM preemption. The Complaint does not allege the elements of a traditional fraud or deceit claim, **as it must in order to survive preemption**. Indeed, it does not even try. Accordingly, Plaintiff's CEMA claim is *not* one of the claims that survives CAN-SPAM preemption. And because Plaintiffs' CEMA claim serves as the predicate for his CPA claim, his CPA claim fails as well. *Chen v. Sur La Table, Inc*., 655 F. Supp. 3d 1082, 1093 (W.D. Wash. 2023) (CPA claim properly dismissed where plaintiff failed to state CEMA violation); *Virtumundo*, 575 F.3d at 1065–66 ("Because [plaintiff's] CEMA claims fail as a matter of law, [plaintiff's] CPA claims, to the extent grounded in CEMA violations, are likewise inadequate and were properly dismissed.").

a.    **The Complaint Does Not Allege Materiality.**

A claim for fraud or deceit requires an allegation of *material* falsehood. *Elcon Constr., Inc. v. E. Wash. Univ.*, 174 Wn.2d 157, 167–68 (2012). But nowhere in the Complaint does Plaintiff contend that any statement by NAPA in any email subject line was material to Plaintiff in any way. Rather, Plaintiff's liability theory contends that NAPA's email promotions created false "urgency" and "time scarcity" (Compl. ¶¶ 29–98), but the Complaint does not allege that this information was material to any purchasing decision by Plaintiff. This is fatal. *Virtumundo*, 575 F.3d at 1065 (requiring "something of *material* importance") (emphasis in original); *Elcon*, 174 Wn.2d at 167 (affirming judgment for defendant where alleged misstatements were not material to the plaintiff); *Martin v. Miller*, 24 Wn. App. 306, 309 (1979) (analyzing whether "representations were material to the plaintiffs' decision to enter into a purchase and marketing agreement with the defendant"). On this independent basis, dismissal is proper.

BALLARD SPAHR LLP
1301 SECOND AVE., SUITE 2800
SEATTLE, WASHINGTON 98101
206.223.7000 FAX: 206.223.7107

1

2          **b.      The Complaint Does Not Allege Reliance.**

3          To state a claim for fraud or deceit, a plaintiff must also allege his own "reliance on the

4  truth" of the misrepresentation. *M.G. v. Bainbridge Island Sch. Dist. #303*, 34 Wn. App. 2d 51, 78

5  n.23, 566 P.3d 132, 148 (2025) (listing the nine elements of fraud). Here, consistent with Plaintiff's

6  mistaken theory of strict liability under CEMA, the Complaint contains no allegation of any

7  reliance whatsoever. Nowhere does Plaintiff allege that *he* relied upon NAPA's email promotions

8  in making some type of purchasing decision, let alone that he even opened or read NAPA's emails.

9  Without any allegation of this essential element, Plaintiff fails to plead a fraud claim. *BP W. Coast*

10 *Prods., LLC v. Shalabi*, No. 11-cv-1341-MJP, 2012 WL 2277843, at *5 (W.D. Wash. June 14,

11 2012) (dismissing fraud claims where plaintiff could not allege reliance element).

12          **c.      The Complaint Does Not Allege That Plaintiff Suffered Any Injury.**

13          In order to state both a claim for fraud and a CPA claim, "[a] plaintiff must establish that,

14 but for the defendant's unfair or deceptive practice, the plaintiff would not have suffered an

15 injury." *Virtumundo, Inc*., 575 F.3d at 1066 (citing *Indoor Billboard/Washington, Inc. v. Integra*

16 *Telecom of Wash., Inc*., 162 Wn.2d 59, 84, 170 P.3d 10, 22 (2007)); *see also M.G. v. Bainbridge*

17 *Island Sch. Dist. #303*, 34 Wn. App. 2d at 78 n.23 (elements of fraud). Here, Plaintiff does not

18 allege that he sustained any injury whatsoever, much less that there was any causal link between

19 NAPA's emails and his (non-existent) injury. Instead, Plaintiff seeks statutory damages on a strict

20 liability basis. Such a theory of liability is in direct contrast with the CAN-SPAM's savings clause,

21 which only saves traditional tort claims that sound in fraud or deceit. Without any allegation of

22 harm or causation, Plaintiff's claim is facially deficient on this ground as well.

23          **d.      The Complaint Does Not Allege That NAPA Knew Its Subject Lines Were "Misleading" When They Were Sent.**

24          Plaintiff contends that the "time pressure" communicated in NAPA's limited email

25 promotions was "contrived" based on the existence of subsequent promotions purportedly sent by

26 or on behalf of NAPA for the same or similar offers. *See, e.g.*, Compl. ¶¶ 73–74. But nowhere does

27 Plaintiff plausibly allege that NAPA knew that the subject lines of the emails listed in the

DEFENDANT'S MOTION TO DISMISS - 9
Case No. 2:25-cv-02280-RAJ

Complaint were "misleading" on the dates they were sent – *i.e.*, that NAPA had "knowledge of its falsity." *M.G. v. Bainbridge Island Sch. Dist. #303*, 34 Wn. App. 2d at 78 n.23 (elements of fraud). Without any allegation that the alleged falsity of the email subject lines was predetermined by NAPA, the Complaint provides no reasonable factual basis to conclude that the emails were knowingly misleading when they were sent. It is just as plausible that promotional emails were sent with accurate anticipated timelines for the promotions, but a business decision was later made to initiate a new promotion or extend a sale. "When faced with 'two possible explanations, only one of which can be true and only one of which results in liability . . . [s]omething more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, in order to render plaintiff's allegations plausible.'" *Prudencio v. Midway Importing, Inc.*, 831 F. App'x 808, 810 (9th Cir. 2021) (dismissing complaint because plaintiff failed to allege facts as excluding a competing explanation); *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 998–99 (9th Cir. 2014) (rejecting allegations that failed to "exclude a plausible and innocuous alternative explanation"). Plaintiff's failure to address this rational business strategy in favor of vague speculation is unsound as a matter of law, and likewise dooms Plaintiff's claim.

### 3.    Any Claim Plaintiff Could Articulate Under CEMA is Subject to Rule 9(b)'s Heightened Pleading Standard.

As noted, Plaintiff does not even attempt to sketch the contours of a "traditional tort" theory of fraud, misrepresentation, or deceit in the Complaint. Plaintiff asserts a strict liability theory instead. But even if Plaintiff were to insist that his claim did sound in tort and fraud (and therefore escapes CAN-SPAM preemption), the Complaint wholly fails to satisfy the pleading standard under Fed. R. Civ. P. 9(b), which governs his CEMA claim under the CPA. *Water & Sanitation Health, Inc. v. Rainforest All., Inc*., No. 15-cv-0075-RAJ, 2015 WL 12657110, at *3 (W.D. Wash. Dec. 29, 2015) (applying 9(b) to fraud-based CPA claim, and explaining "[o]ther courts in this judicial district have held that Rule 9(b) applies to similar claims under the CPA"); *Dvornekovic v. Looney*, No. 13-cv-5812-RBL, 2013 WL 6571935, at *2 (W.D. Wash. Dec. 13, 2013); *Fid. Mortg. Corp. v. Seattle Times Co*., 213 F.R.D. 573, 575 (W.D. Wash. 2003) (holding that Rule

DEFENDANT'S MOTION TO DISMISS - 10
Case No. 2:25-cv-02280-RAJ

BALLARD SPAHR LLP
1301 SECOND AVE., SUITE 2800
SEATTLE, WASHINGTON 98101
206.223.7000 FAX: 206.223.7107

9(b) applied to plaintiff's CPA claim that defendant knowingly published false interest rates in their publications); *Mundle v. Doxo, Inc*., No. 24-cv-0893-TSZ, 2025 LX 224167, at *13 n.2 (W.D. Wash. Apr. 16, 2025) ("For the purpose of resolving Defendants' Motion to Dismiss, the Court applies Rule 9(b)'s heightened pleading standard to Plaintiffs' CPA claim . . . ."); *Harju v. Johnson & Johnson*, No. 20-cv-6258-BHS-JRC, 2021 WL 3929232, at *4 (W.D. Wash. Sep. 2, 2021) (applying Rule 9(b) to plaintiff's "fraud-based claims, including common law fraud and violations of the CPA (which sound in fraud)").

As explained above, Plaintiff does not even try to allege the elements of fraud to escape CAN-SPAM preemption. But minimally, his complaint fails to meet the Rule 9(b) pleading standard applicable to his claims. Because fraud and deceit claims are the *only* claims that can survive CAN-SPAM preemption, Rule 9(b) governs any claims that Plaintiff could possibly assert. *See Virtumundo, Inc*., 575 F.3d at 1062 (9th Cir. 2009) ("a State law prohibiting **fraudulent** or **deceptive** headers, subject lines, or content in commercial e-mail *would not be preempted*.") (citations omitted) (emphasis added).

By failing to allege each element of fraud with particularity, Plaintiff has failed to state a claim as a matter of law. The Complaint lacks a particularized allegation of reliance, as Plaintiff does not allege that he relied on the allegedly misleading emails in any way. This is fatal to his claim. *Haskins v. Symantec Corp*., 654 F. App'x 338, 339 (9th Cir. 2016) (holding plaintiff "failed to plead her fraud claims with particularity as required by Rule 9(b)" by not alleging detrimental reliance); *Great Pac. Sec. v. Barclays Cap., Inc*., 743 F. App'x 780, 782 (9th Cir. 2018) (finding complaint "failed to plead reliance with particularity"). Indeed, Plaintiff seemingly cannot plead reliance. He asserts he received a singular email from NAPA with a promotional code for 20% off orders of $150 and up on June 29, 2024. Compl. ¶¶ 81, 110. He does not claim, however, to have received any follow up emails, such as the July 10, 2024, email discussed in the Complaint. *See id.* ¶ 83. Despite asserting that the emails falsely gave the impression that "the chance for special savings was coming to an end," it is equally plausible that the special savings in fact came to an

BALLARD SPAHR LLP
1301 SECOND AVE., SUITE 2800
SEATTLE, WASHINGTON 98101
206.223.7000 FAX: 206.223.7107

end for Plaintiff who apparently only received a promotional code on June 29, 2024, and not on any later date.

The Complaint also lacks any particularized allegations of materiality, damages, or falsity, which are also fatal. *Joseph v. Amazon.com*, *Inc.*, 46 F. Supp. 3d 1095, 1109 (W.D. Wash. 2014) (granting defendant judgment on the pleadings because plaintiff failed to plead with sufficient particularity any "material representation to him that he had right to and did rely upon to his detriment"); *Khan Air, LLC v. U.S. Aircraft Ins. Grp.*, No. 05-cv-0420-RSL, 2005 WL 2739167, at *1 (W.D. Wash. Oct. 24, 2005) (dismissing counterclaim that failed to "adequately ple[a]d materiality of the omission" or "the nature of its damages[,] [which] must be plead with particularity"). When a plaintiff fails to plead a fraud claim with particularity, dismissal is warranted. *McAfee v. Select Portfolio Servicing, Inc.*, 192 Wn. App. 1059 (2016) (unpublished) (affirming dismissal of fraud claim that failed to "state facts supporting her fraud claims with sufficient particularity").  Plaintiff does not plausibly allege that NAPA knew any particular statement was false when it was made, he does not allege that any alleged falsity was material to him, and he does not allege that he suffered any resulting injury. Plaintiff fails to plead a fraud claim, let alone a fraud claim with the particularity required by Rule 9(b).

### 4.    Plaintiff Failed to Adequately Allege NAPA Knew Plaintiff Was a Washington Resident.

Plaintiff speculates that NAPA "has several ways of knowing" that the alleged email recipients were Washington residents. Compl. ¶ 99. Specifically, Plaintiff alleges that NAPA may have been put on notice of recipients' Washington residency (1) by the "sheer volume of email marketing" it sends; (2) when consumers self-report location information to NAPA either when making purchases or otherwise; (3) by tracking recipients' IP addresses; (4) by purchasing consumer data; (5) by using "identity resolution" services; and (6) by requesting information from the registrant of the internet domain names contained in recipients' email addresses. *Id.* at 11–12. Each of these allegations are speculative at best. Notably, Plaintiff does not assert that NAPA

actually does any of these things to determine a recipient's residence, but rather that it "may" or "could" do these things. This is insufficient to state a claim, let alone meet the Rule 9(b) standard.

Indeed, courts have cast doubt on the reliability of using IP addresses for geolocation purposes. *See Gutierrez v. Converse Inc.*, 2024 WL 2106952, at *17 (C.D. Cal. May 2, 2024) ("The fact that Defendant may have access to chat users' IP addresses and certain chat users' shipping addresses does not mean that they are in a position to make a determination as to where the chat users were located when they used the chat feature."); *United States v. Carter*, 549 F. Supp. 2d 1257 (D. Nev. 2008) (acknowledging that IP addresses can be spoofed, shared, or associated with multiple devices, complicating their use as evidence of the user's definitive location). Further, an IP address is even less of a proxy for residency than a shipping address since an individual could be traveling to Washington when they check an email. Finally, it is not reasonable to ask businesses to use IP addresses to attempt to determine the residency of a recipient of an email. *See Gutierrez*, 2024 WL 2106952, at *17 ("Plaintiff concedes that Defendant is not in a position to make the legal determination of residency with respect to chat users" even if Defendant could rely on IP addresses to determine location). Nor is it reasonable to mandate that companies use these imprecise tools in an attempt to identify Washington residents.[3]

Furthermore, Plaintiff baldly states that "NAPA may obtain information that the recipients of its marketing emails are Washington residents because that information is available, upon request, from the registrant of the Internet domain names contained in the recipients' email addresses." Compl. ¶ 107 (citing RCW 19.190.020(2)). But Plaintiff makes no specific allegations beyond quoting the statutory language. For example, he does not allege the names of the registrant of the internet domain name contained in his email address. Rather, he appears to make an

---

[3] Congress was expressly motivated to pass CAN-SPAM to address this *precise* issue of the impact to businesses arising from the emerging "patchwork" of varying state laws that made nationwide compliance virtually impossible. 15 U.S.C. § 7701(a)(11) (Congressional Findings and Policy) ("Many States have enacted legislation intended to regulate or reduce unsolicited commercial electronic mail, but these statutes impose different standards and requirements."); b(1) ("On the basis of the findings in subsection (a), the Congress determines that— there is a substantial government interest in regulation of commercial electronic mail on a nationwide basis.").

DEFENDANT'S MOTION TO DISMISS - 13
Case No. 2:25-cv-02280-RAJ

BALLARD SPAHR LLP
1301 SECOND AVE., SUITE 2800
SEATTLE, WASHINGTON 98101
206.223.7000 FAX: 206.223.7107

1   unsupported assumption that all domain name registrants are willing and able to produce

2   information about users' locations.

3        Plaintiff fails to adequately allege that NAPA knew or had reason to know of his or any

4   other email recipient's status as a Washington resident. He has therefore failed to allege a necessary

5   element of his CEMA claim.[4]

6        **C.**    **Plaintiff Does Not Adequately Allege a Conspiracy.**

7        Plaintiff cursorily alleges that NAPA "initiated the transmission, *conspired with another*

8   to initiate the transmission, or assisted the transition of commercial electronic mail messages

9   within the meaning of CEMA." Compl. ¶ 127 (emphasis added). Yet *nowhere* does the Complaint

10  articulate any kind of conspiracy between NAPA and any other entity or individual. Under

11  CEMA's plain language, this is facially insufficient. CEMA requires that a defendant "conspire

12  with another." RCW 19.190.020(1). Likewise, common law civil conspiracy also requires

13  allegations that two or more individuals united with a common purpose. *See All Star Gas, Inc., of*

14  *Wash. v. Bechard*, 100 Wn. App. 732, 740 (2000) ("To establish a civil conspiracy, [a plaintiff]

15  must prove by clear, cogent, and convincing evidence that (1) two or more people combined to

16  accomplish an unlawful purpose, or combined to accomplish a lawful purpose by unlawful means;

17  and (2) the conspirators entered into an agreement to accomplish the conspiracy."). Because

18  Plaintiff merely recites the statute, and provides zero factual support for any inference of a

19  conspiracy between NAPA and anyone else, the Complaint fails to allege a conspiracy basis of

20  relief under CEMA as a matter of law.

21       **D.**    **The Damages Award Plaintiff Seeks is Unconstitutionally Punitive.**

22       Plaintiff's request for damages violates the due process clause, which 'set[s] outer limits

23  on the magnitude of damages awards." *Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1120 (9th Cir.

24  2022). "[C]onstitutional due process concerns are heightened where, as here, statutory damages

25  are awarded as a matter of strict liability when plaintiffs are unable to quantify any actual damages

26  

27  ---

[4] Because Plaintiff's CPA claim is entirely based on the theory that NAPA violated CEMA, his
CPA claim necessarily fails as well.

DEFENDANT'S MOTION TO DISMISS - 14
Case No. 2:25-cv-02280-RAJ

BALLARD SPAHR LLP
1301 SECOND AVE., SUITE 2800
SEATTLE, WASHINGTON 98101
206.223.7000 FAX: 206.223.7107

they have suffered." *Id.* In the context of class actions claiming statutory damages, aggregated awards can violate due process. *Id.* at 1121. The Washington Supreme Court recently acknowledged this argument in the context of a similarly punitive statute, the Equal Pay and Opportunities Act, seemingly recognizing that the constitutionality of such a damages award is questionable. *See Branson v. Washington Fine Wine & Spirits, LLC*, 574 P.3d 1031, 1039 n.6 (2025).

In determining whether a statutory damages award is disproportionately punitive, the court is to consider seven factors:

> 1) the amount of award to each plaintiff, 2) the total award, 3) the nature and persistence of the violations, 4) the extent of the defendant's culpability, 5) damage awards in similar cases, 6) the substantive or technical nature of the violations, and 7) the circumstances of each case.

*Wakefield*, 51 F.4th at 1123 (quoting *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1309 (9th Cir. 1990)). Analysis of these seven factors shows that the award Plaintiff seeks is disproportionately, and thus unconstitutionally, punitive.[5]

In *Six Mexican Workers*, for example, the court considered $400 to $1600 per class member excessive even though class members sustained some actual damages for underpayment of wages. 904 F.2d at 1309. Here, Plaintiff alleges that the class size is minimally in the "thousands," Compl. ¶ 117, and refers to twelve allegedly violative emails, *id.*, Ex. A. As to factors (1), (2), and (5), taking Plaintiff's allegations as true, each class member would be awarded $18,000 for receiving twelve emails and sustaining zero actual damages. This is well above what has been considered excessive in other cases. The aggregate fee award would also be shocking. Even assuming "thousands" means a class size of only 2,000 members, Plaintiff is seeking, at minimum, $36

---

[5] To the extent that Plaintiff's theory of CEMA liability does articulate a cognizable claim for relief, then CEMA would exceed the bounds of Washington's regulatory purview and violate the Dormant Commerce Clause. U.S. Const. art. I, § 8, cl. 3. By impermissibly regulating conduct wholly outside of Washington state, and excessively burdening interstate commerce, CEMA would run afoul of fundamental constitutional constraints and the federal government's exclusive purview over interstate commerce.

DEFENDANT'S MOTION TO DISMISS - 15
Case No. 2:25-cv-02280-RAJ

BALLARD SPAHR LLP
1301 SECOND AVE., SUITE 2800
SEATTLE, WASHINGTON 98101
206.223.7000 FAX: 206.223.7107

million in statutory damages on behalf of the class ((($500 x 3) x 12) x 2,000), plus attorneys' fees and costs.

As to factors (3), (4), (6), and (7), NAPA's alleged violations – even if proven – are minor. Plaintiff asserts he received one allegedly violative email from NAPA. *See* Compl. ¶ 110. In the aggregate, Plaintiff alleges NAPA sent twelve emails in the span of nearly three years. *See id.*, Ex. A. This is in no way persistent or pervasive, yet Plaintiff seeks thousands of dollars for allegedly receiving emails that he never relied upon, much less to his detriment. Indeed, Plaintiff is not alleging that NAPA offered a promotion and then failed to follow through, but rather that NAPA offered the same or similar time-restricted promotions in succession. Plaintiff has not articulated any actual injury or damages resulting from NAPA's emails, because none exists. Plaintiff's proposed application of CEMA is, without question, disproportionately punitive in light of the alleged wrongdoing.

## IV.    <u>CONCLUSION</u>

Plaintiff failed to state a claim upon which relief may be granted. His CEMA claim is expressly preempted by the federal CAN-SPAM Act. Plaintiff has no standing to assert a claim under CAN-SPAM, and accordingly his claim must be dismissed with prejudice. To the extent he seeks to avoid CAN-SPAM preemption by asserting a claim for fraud, he has wholly failed to allege such a claim. Nevertheless, he seeks an exorbitant amount of damages without any allegation of harm. Plaintiff's Complaint must be dismissed.

//

//

//

//

//

//

//

DEFENDANT'S MOTION TO DISMISS - 16
Case No. 2:25-cv-02280-RAJ

BALLARD SPAHR LLP
1301 SECOND AVE., SUITE 2800
SEATTLE, WASHINGTON 98101
206.223.7000 FAX: 206.223.7107

DATED: November 21, 2025

BALLARD SPAHR LLP


By:    *s/Erin M. Wilson*
        Jeffrey M. Odom, WSBA No. 36168
        Erin Wilson, WSBA No. 42454
        Dailey Koga, WSBA No. 58683
        1301 Second Ave., Suite 2800
        Seattle, WA  98101
        Telephone:  206.223.7000
        odomj@ballardspahr.com
        wilsonem@ballardspahr.com;
        kogad@ballardspahr.com

Attorneys for National Automotive Parts Association, LLC

I certify this memorandum contains 5267 words in compliance with the Local Civil Rules

DEFENDANT'S MOTION TO DISMISS - 17
Case No. 2:25-cv-02280-RAJ

BALLARD SPAHR LLP
1301 SECOND AVE., SUITE 2800
SEATTLE, WASHINGTON 98101
206.223.7000 FAX: 206.223.7107