The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

HARJOT BAJWA, on his own behalf and on behalf of others similarly situated,

Plaintiff,

and

STATE OF WASHINGTON,

Plaintiff-Intervenor,

v.

NATIONAL AUTOMOTIVE PARTS ASSOCIATION, LLC,

Defendant.

NO. 2:25-cv-02280-RAJ

PLAINTIFF-INTERVENOR STATE OF WASHINGTON'S RESPONSE IN OPPOSITION TO DEFENDANT NATIONAL AUTOMOTIVE PARTS ASSOCIATION, LLC'S MOTION TO DISMISS

Note for Motion Calendar:
December 19, 2025

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS
(2:25-cv-02280-RAJ)

## TABLE OF CONTENTS

I.   INTRODUCTION ............................................................................................................. 1

II.  BACKGROUND ............................................................................................................. 2

III. ARGUMENT ................................................................................................................... 2

    A.   CAN-SPAM Does Not Preempt CEMA Claims About Deceptive Subject Lines ........................................................................................................................ 3

        1.   A plaintiff need not plead common law tort elements to avoid preemption ...... 4

        2.   A plaintiff need not specifically plead fraud to avoid preemption .................... 7

        3.   Applying Rule 9(b)'s heightened pleading standards is inconsistent with the CPA ............................................................................................................ 10

        4.   CEMA complements CAN-SPAM ................................................................... 11

    B.   CEMA Does Not Violate the Dormant Commerce Clause .................................... 12

    C.   NAPA's Due Process Arguments Are Premature ................................................... 13

IV.  CONCLUSION .............................................................................................................. 15

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS - i
(2:25-cv-02280-RAJ)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Am. Apparel & Footwear Ass'n, Inc. v. Baden*,
107 F.4th 934 (9th Cir. 2024) .................................................................................................. 4

*Asis Internet Servs. v. Consumerbargaingiveaways, LLC*,
622 F. Supp. 2d 935 (N.D. Cal. 2009) ................................................................................. 8, 11

*Asis Internet Servs. v. Member Source Media, LLC*,
No. C-08-1321 EMC, 2010 WL 1610066 (N.D. Cal. Apr. 20, 2010) .................................... 8

*Asis Internet Servs. v. Subscriberbase Inc.*,
No. 09-3503SC, 2010 WL 1267763 (N.D. Cal. Apr. 1, 2010) .......................................... 8, 12

*Baertschi v. Jordan*,
413 P.2d 657 (Wash. 1966) .................................................................................................. 10

*Beyond Sys., Inc. v. Kraft Foods, Inc.*,
777 F.3d 712 (4th Cir. 2015) ................................................................................................. 9

*Black Star Farms LLC v. Oliver*,
600 F.3d 1225 (9th Cir. 2010) ............................................................................................. 12

*Brown v. Old Navy, LLC*,
567 P.3d 38 (Wash. 2025) ...................................................................................................... 6

*Deegan v. Windermere Real Est./Ctr.-Isle, Inc.*,
391 P.3d 582 (Wash. App. 2017) ......................................................................................... 10

*Elcon Constr., Inc. v. E. Wash. Univ.*,
273 P.3d 965 (Wash. 2012) .................................................................................................... 7

*Erie R. Co. v. Tompkins*,
304 U.S. 64 (1938) ............................................................................................................... 11

*Gordon v. Impulse Mktg. Grp., Inc.*,
375 F. Supp. 2d 1040 (E.D. Wash. 2005) ............................................................................. 10

*Gordon v. Virtumundo, Inc.*,
575 F.3d 1040 (9th Cir. 2009) .................................................................................... 3–6, 9, 11

*Harbers v. Eddie Bauer, LLC*,
415 F. Supp. 3d 999 (W.D. Wash. 2019) .............................................................................. 10

*Harrington v. Vineyard Vines, LLC*,
No. C25-1115TSZ, 2025 WL 3677479 (W.D. Wash. Dec. 18, 2025) ............................. 2, 5, 6

*Hickey v. Voxernet LLC*,
887 F. Supp. 2d 1125 (W.D. Wash. 2012) .............................................................................. 3

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS - ii
(2:25-cv-02280-RAJ)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

*Hoang v. Reunion.com, Inc.*,
  No. C-08-3518 MMC, 2010 WL 1340535 (N.D. Cal. Mar. 31, 2010) ................................... 8

*Hypertouch Inc. v. ValueClick, Inc.*,
  123 Cal. Rptr. 3d 8 (Cal. App. 2011) ................................................................................. 9

*In re Ramos*,
  326 P.3d 826 (Wash. App. 2014) ....................................................................................... 9

*Int'l Franchise Ass'n, Inc. v. City of Seattle*,
  803 F.3d 389 (9th Cir. 2015) ........................................................................................... 12

*Keithly v. Intelius Inc.*,
  764 F. Supp. 2d 1257 (W.D. Wash. 2011) ......................................................................... 7

*Kempf v. FullBeauty Brands Operations, LLC*,
  No. C25-1141 TSZ, 2026 WL 395677 (W.D. Wash. Feb. 12, 2026) ......................... 2, 5–6, 8

*Kleffman v. Vonage Holdings Corp.*,
  No. CV 07-2406GAFJWJX, 2007 WL 1518650 (C.D. Cal. May 23, 2007) ......................... 9

*Lyng v. Nw. Indian Cemetery Protective Ass'n*,
  485 U.S. 439 (1988) ........................................................................................................ 13

*Ma v. Nike, Inc.*,
  No. C25-1235JLR, 2026 WL 100731 (W.D. Wash. Jan. 14, 2026) ............................... 2, 5, 8

*Martin v. Miller*,
  600 P.2d 698 (Wash. App. 1979) ....................................................................................... 7

*Martins v. Vermont Mut. Ins. Co.*,
  92 F.4th 325 (1st Cir. 2024) ............................................................................................ 11

*Medtronic, Inc. v. Lohr*,
  518 U.S. 470 (1996) ........................................................................................................... 4

*Meilleur v. AT & T Inc.*,
  No. 11–1025 MJP, 2011 WL 5592647 (W.D. Wash. Nov. 16, 2011) .................................. 3

*Nat'l Pork Producers Council v. Ross*,
  598 U.S. 356 (2023) ........................................................................................................ 13

*Omega World Travel, Inc. v. Mummagraphics, Inc.*,
  469 F.3d 348 (4th Cir. 2006) ..................................................................................... 4, 6, 9

*Panag v. Farmers Ins. Co. of Wash.*,
  204 P.3d 885 (Wash. 2009) ...................................................................................... 7–8, 10

*Scott v. Cingular Wireless*,
  161 P.3d 1000 (Wash. 2007) ............................................................................................. 3

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS - iii
(2:25-cv-02280-RAJ)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

*Six (6) Mexican Workers v. Arizona Citrus Growers*,
  904 F.2d 1301 (9th Cir. 1990) ............................................................................. 13

*St. Louis, I. M. & S. Ry. Co. v. Williams*,
  251 U.S. 63 (1919)............................................................................................... 14

*State Farm Fire & Cas. Co. v. Huynh*,
  962 P.2d 854 (Wash. App. 1998) ......................................................................... 10

*Stengel v. Medtronic Inc.*,
  704 F.3d 1224 (9th Cir. 2013) ............................................................................... 3

*Stieneke v. Russi*,
  190 P.3d 60 (Wash. App. 2008) ........................................................................... 10

*Sw. Sunsites, Inc. v. Fed. Trade Comm'n*,
  785 F.2d 1431 (9th Cir. 1986) ............................................................................... 9

*ThermoLife Int'l LLC v. NeoGenis Labs Inc.*,
  No. CV-18-02980-PHX-DWL, 2020 WL 6395442 (D. Ariz. Nov. 2, 2020)......................... 3

*United States v. Phillips*,
  433 F.2d 1364 (8th Cir. 1970) ............................................................................. 12

*Valansi v. Ashcroft*,
  278 F.3d 203 (3d Cir. 2002) ................................................................................... 9

*Wagner v. Spire Vision*,
  No. C 13-04952 WHA, 2014 WL 889483 (N.D. Cal. Mar. 3, 2014) ...................................... 7

*Wakefield v. ViSalus, Inc.*,
  51 F.4th 1109 (9th Cir. 2022) ................................................................... 1, 13, 14

### Statutes

15 U.S.C. § 7704(a)(2)........................................................................................... 11

15 U.S.C. § 7707(b)(1) ............................................................................................ 4

15 U.S.C. § 7707(b)(2) ........................................................................................... 11

Wash. Rev. Code § 19.190.020(1)......................................................................... 13

Wash. Rev. Code § 19.190.020(1)(a) ...................................................................... 5

Wash. Rev. Code § 19.190.020(1)(b) ........................................................... 2, 4, 11

Wash. Rev. Code § 19.190.030(1)(b) ................................................................... 10

Wash. Rev. Code § 19.86.920 .............................................................................. 11

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS - iv
(2:25-cv-02280-RAJ)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

**Other Authorities**

H. Comm. on Energy & Utilities, 55th Leg., Reg. Sess., House Bill Report on
    H.B. 2752 (Wash. 1998) ............................................................................................ 2

S. Comm. on Energy, Technology & Telecommunications, 56th Leg., Reg. Sess.,
    Senate Bill Report on H.B. 1037 (Wash. 1999) ....................................................... 2

S. Rep. No. 108-102 (2003) .......................................................................................... 5

**Constitutional Provisions**

U.S. Const. art. VI, cl. 2 ................................................................................................ 3

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS - v
(2:25-cv-02280-RAJ)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

## I.   INTRODUCTION

Washington's Commercial Electronic Mail Act (CEMA) is constitutional. The statute protects Washington residents from deceptive commercial email messages and makes sending them a violation of the Washington Consumer Protection Act (CPA). The federal Controlling the Assault of Non-Solicited Pornography and Marketing Act (CAN-SPAM) does not preempt CEMA. In arguing otherwise, Defendant National Automotive Parts Association, LLC (NAPA) tries to impose on plaintiffs a heightened fraud standard that is not found anywhere in either CEMA or CAN-SPAM. CAN-SPAM's preemption savings clause specifically carves out and preserves state statutes like CEMA that prohibit misleading or deceptive emails. NAPA's cited authority does not support its argument that CEMA plaintiffs must plead fraud or another tort to avoid preemption, nor does NAPA acknowledge the many courts that have rejected that argument.

CEMA also does not discriminate against out-of-state interests or otherwise violate the dormant Commerce Clause. Like many state laws, CEMA's protection may, at times, have a practical effect on people or companies outside Washington, but that occasional extraterritorial impact does not offend the United States Constitution. To the extent the Court even considers this argument—which totals 71 words in a footnote devoid of a single case citation—NAPA's request to strike down CEMA under the dormant Commerce Clause misunderstands federal constitutional law and the operation of the interconnected modern economy.

NAPA's due process argument similarly fails. The case upon which NAPA relies, *Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1120 (9th Cir. 2022), noted that a large class action verdict entered after a trial could raise due process concerns only "in the most egregious of circumstances." There has not even been class certification here, let alone a jury verdict, so striking down a state statute on NAPA's speculation about what a jury may eventually award would be both premature and unprecedented. Moreover, the court in *Wakefield* merely remanded

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS - 1
(2:25-cv-02280-RAJ)

the matter to the district court to evaluate the issue; the Ninth Circuit did not create a bright-line rule regarding due process for statutory damages like those in CEMA.

This Court should deny the motion, just as it has denied similar efforts in three other recent orders. *See Kempf v. FullBeauty Brands Operations, LLC*, No. C25-1141 TSZ, 2026 WL 395677 (W.D. Wash. Feb. 12, 2026); *Harrington v. Vineyard Vines, LLC*, No. C25-1115TSZ, 2025 WL 3677479 (W.D. Wash. Dec. 18, 2025), *reconsideration denied sub nom.*, No. C25-1115 TSZ, 2026 WL 125134 (W.D. Wash. Jan. 16, 2026); *Ma v. Nike, Inc.*, No. C25-1235JLR, 2026 WL 100731 (W.D. Wash. Jan. 14, 2026).

## II.   BACKGROUND

Adopted in 1998, CEMA's application to email is narrow. At issue here, CEMA prohibits a person from sending email marketing messages containing "false or misleading information," specifically "in the subject line," to email addresses the sender knows or has reason to know belongs to Washington State residents. Wash. Rev. Code § 19.190.020(1)(b). The Attorney General's Office reported to the Legislature that during the five-month period before CEMA's passage, of 322 complaints received about unsolicited email, many were commercial advertisements and "spam [was] the highest category of consumer complaints" the office received overall. H. Comm. on Energy & Utilities, 55th Leg., Reg. Sess., House Bill Report on H.B. 2752 (Wash. 1998). Legislative testimony emphasized that CEMA "allows expansion of Internet usage while curtailing abuses before they reach crisis." S. Comm. on Energy, Technology & Telecommunications, 56th Leg., Reg. Sess., Senate Bill Report on H.B. 1037 (Wash. 1999).

## III.   ARGUMENT

The State intervenes for the limited purpose of defending CEMA's constitutionality pursuant to 28 U.S.C. § 2403(b). It takes no position with respect to other issues raised in the litigation, including whether the email subject lines at issue are false or misleading as a matter of law. Overall, the State agrees with the arguments regarding CEMA's constitutionality in

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS - 2
(2:25-cv-02280-RAJ)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

Plaintiff's response brief. Dkt. 14 at 3-17. The State writes separately, however, to offer the perspective of the State's chief law enforcement officer as to CEMA's constitutionality, its proper interpretation, and the importance of private enforcement of consumer protection statutes like CEMA. *See Scott v. Cingular Wireless*, 161 P.3d 1000, 1006 (Wash. 2007) (observing "[p]rivate actions by private citizens are now an integral part of CPA enforcement" and that consumers "bringing actions under the CPA do not merely vindicate their own rights; they represent the public interest and may seek injunctive relief even when the injunction would not directly affect their own private interests").

### A.    CAN-SPAM Does Not Preempt CEMA Claims About Deceptive Subject Lines

Preemption is a constitutional issue warranting the State's intervention under Rule 5.1. *See Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1060 (9th Cir. 2009) (citing U.S. Const. art. VI, cl. 2) (observing preemption doctrine "derives from the Supremacy Clause of the United States Constitution"); *ThermoLife Int'l LLC v. NeoGenis Labs Inc.*, No. CV-18-02980-PHX-DWL, 2020 WL 6395442, at *16 (D. Ariz. Nov. 2, 2020) (stating because preemption claims are constitutional in nature, state must be allowed to address such claims).

Any preemption analysis begins with the "presumption against supplanting the historic police powers of the States by federal legislation unless that is the clear and manifest purpose of Congress." *Virtumundo*, 575 F.3d at 1060 (cleaned up). "This presumption against preemption leads us to the principle that express preemption statutory provisions should be given narrow interpretation." *Id*. (cleaned up). NAPA, as the party "seeking to invalidate a state law based on preemption bear[s] the considerable burden of overcoming the starting presumption that Congress does not intend to supplant state law." *Stengel v. Medtronic Inc.*, 704 F.3d 1224, 1227–28 (9th Cir. 2013) (en banc) (cleaned up). "Consumer protection is an area of traditional state authority creating a presumption against federal preemption." *Hickey v. Voxernet LLC*, 887 F. Supp. 2d 1125, 1130 (W.D. Wash. 2012) (citing *Meilleur v. AT & T Inc.*, No. 11–1025 MJP, 2011 WL 5592647 at *3 (W.D. Wash. Nov. 16, 2011)). Thus, the

PLAINTIFF-INTERVENOR STATE OF WASHINGTON'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS - 3 (2:25-cv-02280-RAJ)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

presumption against preemption applies to both the *existence* and *scope* of the alleged preemption. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996).

As relevant here, CAN-SPAM's preemption clause is limited and focused on state laws creating liability for mere non-deceptive errors or omissions. While the clause states that the statute supersedes any state law that "regulates the use of electronic mail to send commercial messages," it expressly exempts "any such statute" that "prohibits falsity or deception in any portion of a commercial electronic mail message or information attached thereto." 15 U.S.C. § 7707(b)(1). The CEMA provision at issue here does just that, prohibiting any email that "[c]ontains false or misleading information in the subject line." Wash. Rev. Code § 19.190.020(1)(b). This plain language should end the analysis. *Am. Apparel & Footwear Ass'n, Inc. v. Baden*, 107 F.4th 934, 939 (9th Cir. 2024) (to interpret an express preemption clause, a court is required "to look to the plain wording of the statute and surrounding statutory framework to determine whether Congress intended to preempt state law").

### 1. A plaintiff need not plead common law tort elements to avoid preemption

Despite CAN-SPAM's plain language, NAPA presses a restrictive reading of the preemption clause, asserting it saves "only" traditional tort theories like fraud from preemption. Dkt. 11 at 6 (relying primarily on *Virtumundo*). This is incorrect as a matter of law and cannot be squared with NAPA's own authorities—none of which state "only" tort claims are exempt.

Sixteen years ago, *Virtumundo* addressed the scope of CAN-SPAM's preemption clause as an issue of first impression in this circuit, relying in part on the then-only federal circuit court decision addressing the clause: *Omega World Travel, Inc. v. Mummagraphics, Inc.*, 469 F.3d 348 (4th Cir. 2006). *Virtumundo,* 575 F.3d at 1059-60. However, neither *Virtumundo* nor *Omega* held that common law torts like fraud are the "only" state law claims saved from the CAN-SPAM preemption clause. To the contrary, both cases *confirm* the exception applies broadly to "traditionally tortious <u>or wrongful conduct</u>." *Virtumundo*, 575 F.3d at 1062 (quoting *Omega*, 469 F.3d at 354) (emphasis added). Far from supporting NAPA's arguments,

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS - 4
(2:25-cv-02280-RAJ)

*Virtumundo* explained state law claims about deceptive email subject lines were not preempted. *Id*. at 1062 (observing the legislative intent that "a State law prohibiting *fraudulent or deceptive* headers, subject lines, or content in commercial e-mail would not be preempted").

Thus, because CEMA's subject-line provision prohibits only "falsity" or "deception" in the subject-line of commercial e-mails, it "falls squarely within this area reserved to the States[.]" *Harrington*, 2025 WL 3677479, at *1; *see also Kempf*, 2026 WL 395677, at *4 ("CEMA's provision forbidding the inclusion of false or misleading information in the subject line of an e-mail (RCW 19.190.020(1)(b)) falls squarely within the area that CAN-SPAM reserved to the States."); *Ma*, 2026 WL 100731, at *2 (same). This conclusion is supported by the Senate Report accompanying CAN-SPAM, which explained that although the purpose of the CAN-SPAM Act was to impose a single national standard for the content of commercial e-mail, "[s]tatutes that prohibit fraud and deception in e-mail do not raise the same concern, because they target behavior that a legitimate business trying to comply with relevant laws would not be engaging in anyway." S. Rep. No. 108-102, at 21-22 (2003).

In any event, *Virtumundo* did not directly address deceptive email subject lines. Instead, it considered whether CAN-SPAM preempted the plaintiff's claims under CEMA's provision (1)(a), which prohibits email that "misrepresents or obscures" information about the sender. Wash. Rev. Code § 19.190.020(1)(a). That provision is not at issue here. In any event, unlike this case, the *Virtumundo* plaintiff admitted none of the emails at issue misled or deceived him "in any way." *Virtumundo*, 575 F.3d at 1063. Rather, he asserted the sender should have been "Virtumundo" rather than the abbreviated domain names they used. *Id*. at 1063-64. The Ninth Circuit concluded that such "technical" allegations of "non-deceptive" inaccuracies or omissions are "at best" claims for "incomplete or less than comprehensive information." *Id*. at 1064. Understandably, the court concluded that to the extent that provision (1)(a) addressed non-deceptive acts and practices, this did not rise to the level of "wrongful conduct" or "falsity or deception" necessary to avoid preemption. *Id*. at 1062, 1064. The *Omega* court likewise was

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS - 5
(2:25-cv-02280-RAJ)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

focused on state law claims that could potentially impose strict liability for "insignificant inaccuracies" or "bare error" rather than "falsity or deception." 469 F.3d at 352-56. This case, in contrast, is about provision 1(b), which only prohibits "false or misleading information" and cannot be read to impose liability for simple mistakes. *Virtumundo* and *Omega* thus do not support preemption.

Further, in *Virtumundo*, the Ninth Circuit acknowledged that CEMA's statutory framework at least suggested CEMA "extends only to deceptive commercial e-mail" rather than non-deceptive acts or mere clerical errors. 575 F.3d at 1059, n.17. When the Ninth Circuit decided *Virtumundo* in 2009, however, it observed that how narrowly or broadly to interpret CEMA was unsettled. *Id.* at 1059. The *Virtumundo* court thus concluded that "state courts may ultimately mold CEMA's broad language so as to cabin its breadth or interpret the law in conformity with federal legislation." *Id.* at 1059. Last year, following certification from this Court, the Washington State Supreme Court did just that in *Brown v. Old Navy, LLC*, 567 P.3d 38, 47 (Wash. 2025).

In *Brown*, the court confirmed that CEMA's subject line provision does not prohibit mere technical errors or "mere puffery." *Id*. The *Brown* court held CEMA's subject line provision addresses deceptive "representations of fact—like the duration or availability of a promotion, its terms and nature, the cost of goods, and other facts Washington residents would depend on in making their consumer decisions." *Id. Brown* thus addressed the concern the *Omega* court had in 2006: that the preemption exemption might be allowed to "sweep up" mere "errors." As this Court recently recognized, *Brown* harmonizes CEMA with CAN-SPAM by making clear that CEMA's subject line provision prohibits false or deceptive statements about facts that would be important to consumer decision making. *See Harrington*, 2025 WL 3677479, at *1; *Kempf*, 2026 WL 395677, at *5.

Tellingly, NAPA does not even address the *Brown* opinion until its reply brief, mysteriously arguing that "[a]lthough *Brown* may shed light on CEMA's purpose and

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS - 6
(2:25-cv-02280-RAJ)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

application as a matter of state law, it provides *zero* insight into whether Plaintiff's CEMA claim is preempted by CAN-SPAM." Dkt. 15 at 5 (emphasis in original). Contrary to NAPA's assertions, *Brown* is directly relevant to because the proper interpretation of CEMA is the starting point of the Court's preemption analysis.

NAPA's citations to *Elcon Constr., Inc. v. E. Wash. Univ.*, 273 P.3d 965 (Wash. 2012), and *Martin v. Miller,* 600 P.2d 698 (Wash. App. 1979), fare no better. Those cases dealt with actual fraud claims and speak to their elements, not CEMA.

This Court should likewise decline NAPA's tacit invitation to substitute NAPA's own view that email-subject lines are unlikely to influence consumers for the Washington State Supreme Court's interpretations of Washington State law. First, at the Rule 12 stage, the Court must accept all of Plaintiffs' well-pled allegations as true for purposes of ruling on NAPA's motion. Nevertheless, when evaluating the tendency of language to deceive for a CPA claim (like those under CEMA), Washington courts look "not to the most sophisticated [consumers] but rather to the least." *Panag v. Farmers Ins. Co. of Wash.*, 204 P.3d 885, 895 (Wash. 2009) (citation omitted); *Keithly v. Intelius Inc.*, 764 F. Supp. 2d 1257, 1268 (W.D. Wash. 2011), *on reconsideration*, No. C09-1485RSL, 2011 WL 2790471 (W.D. Wash. May 17, 2011) (while some consumers might not be fooled, "not everyone is so wary and/or detail-oriented, nor is the CPA designed to protect only those who need no protection. The capacity of a marketing technique to deceive is determined with reference to the least sophisticated consumers among us.").

### 2.     A plaintiff need not specifically plead fraud to avoid preemption

NAPA spends considerable time addressing the elements of fraud in its motion. Dkt. 11 at 8-12. But consumer protection statutes such as CEMA do not sound in fraud, and "[t]he great weight of district court and state court decisions" reject a requirement that consumers plead all the elements of common law fraud to avoid preemption of their anti-spam law claims. *Wagner v. Spire Vision*, No. C 13-04952 WHA, 2014 WL 889483, at *2-4 (N.D. Cal. Mar. 3, 2014)

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS - 7
(2:25-cv-02280-RAJ)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

(collecting cases regarding the same); *see also Ma*, 2026 WL 100731, at *3 (addressing this very issue and concluding plaintiff need not plead reliance, injury or materiality to avoid preemption); *Kempf*, 2026 WL 395677, at *4 (same); *Asis Internet Servs. v. Member Source Media, LLC*, No. C-08-1321 EMC, 2010 WL 1610066, at *3 (N.D. Cal. Apr. 20, 2010) (considering California's subject line provision, *Virtumundo*, and CAN-SPAM's preemption clause, and holding plaintiff "need not plead reliance and damages in order for its claim to be excepted from preemption"); *Hoang v. Reunion.com, Inc.*, No. C-08-3518 MMC, 2010 WL 1340535, at *6 (N.D. Cal. Mar. 31, 2010) (reversing dismissal under *Virtumundo*, holding failure to allege detrimental reliance was not proper grounds for dismissal); *see also* Dkt. 14 at 6 (analyzing additional authority holding the same). Congress explicitly chose not to use the word "fraud" in the CAN-SPAM preemption provision at issue here, even though it did in the very next provision. *Ma*, 2026 WL 100731, at *3 (citing *Asis Internet Servs. v. Consumerbargaingiveaways, LLC*, 622 F. Supp. 2d 935, 942 (N.D. Cal. 2009) ("Congress . . . is certainly familiar and with the word 'fraud' and choose not to use it; the words 'falsity *or* deception' suggest broader application . . . Congress utilized the word 'fraud' in the very next subsection but not in the savings clause.") (citation omitted); *Asis Internet Servs. v. Subscriberbase Inc.*, No. 09-3503SC, 2010 WL 1267763, at *11 (N.D. Cal. Apr. 1, 2010) ("The explicit language of the preemption clause betrays no intention by Congress to limit state regulation to the simple codification of common law fraud in its purest form.")). This Court should not impose extraneous non-statutory fraud standards here.

Perhaps seeking to avoid this inevitable result, NAPA attempts a bit of semantic sleight of hand, attempting to replace the term "deception" in CAN-SPAM with the term "deceit." Dkt. 11 at 6-7. The former is well-developed under Washington law (and other consumer protection laws), while the latter is a term found nowhere in CAN-SPAM, CEMA, or the relevant case law. In the consumer protection context, "[d]eception exists 'if there is a representation, omission or practice that is likely to mislead' a reasonable consumer." *Panag*, 204 P.3d at 895

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS - 8
(2:25-cv-02280-RAJ)

(quoting *Sw. Sunsites, Inc. v. Fed. Trade Comm'n*, 785 F.2d 1431, 1435 (9th Cir. 1986)). By contrast, "the term 'deceit' is commonly perceived and has been defined as the act of intentionally giving a false impression." *In re Ramos*, 326 P.3d 826, 831 (Wash. App. 2014) (citing *Valansi v. Ashcroft*, 278 F.3d 203, 209-10 (3d Cir. 2002)). Thus, while all deceit is likely deceptive, the converse is not necessarily true. Deception is not deceit, and the Court should reject NAPA's attempt to rewrite the plain language of CAN-SPAM.

CEMA's prohibition on false or misleading subject lines, like similar consumer protection statutes, reflects policy decisions about wrongful conduct for which there was no common law tort remedy. A plaintiff need not allege the elements of fraud because the statute has already defined the wrongful behavior.[1]

For similar reasons, the Fourth Circuit concluded that neither California nor Maryland's anti-spam statutes were preempted despite neither one requiring pleading or proof of the elements of fraud. *Beyond Sys., Inc. v. Kraft Foods, Inc.*, 777 F.3d 712, 717 (4th Cir. 2015) (citing *Omega*, 469 F.3d 348). Looking at Maryland's statute, the court found that the state appellate court's earlier conclusion that violations of the anti-spam statute, "like violations of the Consumer Protection Act," impose liability for wrongful conduct similar to tort, was sufficient to avoid preemption. *Id*. at 717. Turning to California's statute, the Fourth Circuit likewise noted that (like *Brown*), a state appellate court "limit[ed] the application of California's anti-spam law to deceptive emails" and therefore was not preempted. *Id.* (citing *Hypertouch Inc. v. ValueClick, Inc.*, 123 Cal. Rptr. 3d 8 (Cal. App. 2011)). The *Hypertouch* court had already held California's anti-spam law "dispenses with many of the elements associated with common law fraud." *Hypertouch*, 123 Cal. Rptr. 3d. This and other courts have rejected NAPA's proposed

---

[1] CEMA's requirement of falsity or deception (i.e., wrongdoing) distinguishes NAPA's cited authority. Dkt. 11 at 7, n.2 (citing *Virtumundo* and *Kleffman v. Vonage Holdings Corp.*, No. CV 07-2406GAFJWJX, 2007 WL 1518650, at *2-3 (C.D. Cal. May 23, 2007)). *Kleffman* addressed missing information in the email sender line, while the plaintiff conceded the sender line "literally and truthfully" identified defendant as sender and made no allegations of false or misleading statements. 2007 WL 1518650, at *2.

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS - 9
(2:25-cv-02280-RAJ)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

rule that the elements of fraud must be pled to avoid preemption. This Court, too, made a similar finding when concluding a plaintiff had Article III standing when making a CEMA claim: "[t]he harms resulting from deceptive commercial e-mails resemble the type of harms remedied by nuisance or fraud actions." *Harbers v. Eddie Bauer*, *LLC*, 415 F. Supp. 3d 999, 1008 (W.D. Wash. 2019). The Court should likewise reject NAPA's effort to impose additional pleading requirements on CEMA plaintiffs.

**3.      Applying Rule 9(b)'s heightened pleading standards is inconsistent with the CPA**

NAPA's argument also runs counter to the CPA. A CEMA subject-line provision violation is a per se CPA violation. Wash. Rev. Code § 19.190.030(1)(b). A CPA claim is not a fraud-based cause of action: "[t]he CPA significantly differs from traditional common law standards of fraud and misrepresentation." *Deegan v. Windermere Real Est./Ctr.-Isle, Inc.*, 391 P.3d 582, 587 (Wash. App. 2017). Thus, despite NAPA's argument that Plaintiff is required to plead the elements of these tort claims (Dkt. 11 at 10-12), Rule 9(b) is inapplicable to both the CPA and CEMA. *Gordon v. Impulse Mktg. Grp., Inc.*, 375 F. Supp. 2d 1040, 1048 (E.D. Wash. 2005) (explaining a claim under CEMA and CPA did not sound in fraud because the claims required different elements and holding CEMA claims "do not trigger the heightened pleading requirements of Rule 9(b)."). Indeed, the elements and burden of proof are materially different between CPA claims and fraud.

A private CPA violation requires five elements, *Panag*, 204 P.3d at 889, while fraud has nine, *Stieneke v. Russi*, 190 P.3d 60, 69-70 (Wash. App. 2008) (quotation omitted). A CPA violation (and, thus, a CEMA violation) is established with the standard civil evidentiary burden of "preponderance of the evidence," while fraud is subject to the higher "clear, cogent, and convincing" burden. *E.g.*, *Baertschi v. Jordan*, 413 P.2d 657, 660 (Wash. 1966) (fraud claim); *State Farm Fire & Cas. Co. v. Huynh*, 962 P.2d 854, 863 (Wash. App. 1998) (fraud and CPA claims). Indeed, no Washington appellate court has ever held that a CPA claim (whether direct

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS - 10
(2:25-cv-02280-RAJ)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

or per se) sounds in fraud or has required a heightened fraud pleading standard. Federal courts can impose pleading standards, but they cannot add elements to state law claims nor change the substantive evidentiary burdens of state law claims as NAPA urges. *See, e.g.*, *Martins v. Vermont Mut. Ins. Co.*, 92 F.4th 325, 328 (1st Cir. 2024) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).

Finally, the CPA must be liberally construed to protect consumers. Wash. Rev. Code § 19.86.920. Applying fraud standards to a per se CPA claim—like a CEMA subject line provision violation—conflicts with Washington's liberal construction mandate.

### 4.    CEMA complements CAN-SPAM

NAPA's preemption argument also undermines Congress' purpose in enacting CAN-SPAM. A preemption analysis is "guided by the oft-repeated comment that the purpose of Congress is the ultimate touchstone in every preemption case." *Virtumundo*, 575 F.3d at 1060 (cleaned up). Here, CEMA's subject line provision aligns with Congress' purpose in enacting CAN-SPAM—a purpose which would not be served by preempting or narrowing CEMA. Congress enacted CAN-SPAM in 2003 to "curb the negative consequences of spam and spamming practices without stifling legitimate commerce." *Id*. at 1045. CAN-SPAM's prohibition on deceptive or misleading information in email subject lines is one means of accomplishing this purpose. 15 U.S.C. § 7704(a)(2). CEMA's subject line provision supports this same goal by prohibiting "false or misleading" information in email subject lines. Wash. Rev. Code § 19.190.020(1)(b). Congress chose to expressly save such state law claims regarding "falsity or deception" from preemption without requiring plaintiffs to plead "fraud." As one circuit court observed, Congress "is certainly familiar with the word 'fraud'" but chose not to use it even though it "utilized the word 'fraud' in the very next subsection but not in the savings clause." *Consumerbargaingiveaways*, 622 F. Supp. 2d at 942 (citing 15 U.S.C. § 7707(b)(2)).

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS - 11
(2:25-cv-02280-RAJ)

Finally, requiring higher, more stringent pleading standards for claimants does not serve any congressional purpose. *Subscriberbase Inc.*, 2010 WL 1267763, at *11-12 (stating the focus of CAN-SPAM is on the "behavior of advertisers," and "adding the traditional fraud elements of reliance and damages does not add anything to Congress's efforts to create a uniform system of regulation governing email advertisements"). NAPA's argument undermines, rather than protects, the federal interest in CAN-SPAM.

**B.    CEMA Does Not Violate the Dormant Commerce Clause**

In a footnote, NAPA argues that CEMA is unconstitutional under the dormant Commerce Clause by "impermissibly regulating conduct wholly outside of Washington state, and excessively burdening interstate commerce." Dkt. 11 at 15, n.5. In seeking to strike down a state statute in place for nearly three decades on these constitutional grounds, NAPA devotes a total of 71 words to the issue and fails to cite a single case in support of its argument. *Id.* As the Eighth Circuit has observed, "[s]uch naked castings into the constitutional sea are not sufficient to command judicial consideration and discussion." *United States v. Phillips*, 433 F.2d 1364, 1366 (8th Cir. 1970).

To the extent the Court entertains this issue any further, NAPA's argument fails out of the gate. State laws only violate the dormant Commerce Clause when they discriminate in favor of their own residents and economic interests, to the detriment of out-of-state residents or interests. *See Int'l Franchise Ass'n, Inc. v. City of Seattle*, 803 F.3d 389, 399 (9th Cir. 2015). It is well established that the "party challenging the statute bears the burden of showing discrimination." *Black Star Farms LLC v. Oliver*, 600 F.3d 1225, 1230 (9th Cir. 2010). Despite this, NAPA fails to address discrimination in its motion, and similarly ignores the dormant Commerce Clause in its reply.

As to the contention that CEMA "impermissibly regulat[es] conduct wholly outside of Washington state," this ignores the plain language of CEMA, which requires either (1) "a computer located <u>in Washington</u>" or (2) "an electronic mail address that the sender knows,

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS - 12
(2:25-cv-02280-RAJ)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

or has reason to know, is held by <u>a Washington resident</u>." Wash. Rev. Code § 19.190.020(1) (emphasis added). In any event, the Supreme Court's decision in *National Pork Producers Council v. Ross*, 598 U.S. 356, 368 (2023), reiterated that a state statute frequently has an extraterritorial impact, but this does not rise to a dormant Commerce Clause violation. If NAPA's proffered extraterritorial rule was allowed to go into effect, it is hard to imagine how the interconnected modern economy would continue to function. *Id.* at 374 ("In our interconnected national marketplace, many (maybe most) state laws have the 'practical effect of controlling' extraterritorial behavior.").

### C.   NAPA's Due Process Arguments Are Premature

NAPA next challenges CEMA on due process grounds, claiming that "the *extent* of the liability imposed by CEMA is unconstitutionally punitive." Dkt. 15 at 10 (italics in original). This argument fails.

NAPA's due process challenge is premature. The two cases upon which NAPA relies—*Wakefield v. ViSalus, Inc.*, 51 F.4th 1109 (9th Cir. 2022), *cert. denied*, 143 S.Ct. 1756 (2023) and *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1304 (9th Cir. 1990)—each discussed the potential of due process concerns in the context of damages verdicts issued at the conclusion of trial. Here, the Court has not even certified a class, let alone entered judgment, and it should reject as premature NAPA's argument that "the *extent* of the liability imposed by CEMA constitutional challenge is unconstitutionally punitive" unless and until the issue is ripe. *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988).

*Wakefield* did not establish the bright line rule against aggregated damages NAPA intimates here. Instead, the Ninth Circuit reiterated that district courts must provide due consideration of the issue at the appropriate time and only in "certain extreme circumstances." 51 F.4th at 1121. A motion to dismiss in a putative class action—one in which the class has neither been defined nor certified—cannot ever rise to the "certain extreme circumstances" warned about in *Wakefield*.

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS - 13
(2:25-cv-02280-RAJ)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

*Wakefield* involved a class action lawsuit against a robocaller who made more than 1.8 million illegal robocalls to consumers. The minimum statutory damages for each violation under the federal Telephone Consumer Protection Act is $500, and that is the per-penalty amount the trial court awarded, for a total of $925,220,000 in statutory damages. *Id.*, 51 F.4th at 1116. In reversing the award on due process grounds, the Ninth Circuit noted that the $500 per-penalty award as in and of itself constitutional but "constitutional due process concerns are heightened where, as here, statutory damages are awarded as a matter of strict liability when plaintiffs are unable to quantify any actual damages they have suffered from receiving the robocalls." *Id*. at 1120. To be clear, though, the Ninth Circuit did not hold that the $925,220,000 award was unconstitutional, it instead remanded the matter to allow the district court to consider the award in light of due process concerns. *Id.* at 1125.

The Ninth Circuit made clear that the Fourteenth Amendment guarantee of due process will only come into play "in the most egregious of circumstances," and will serve to cap aggregate statutory damages where the award is "so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable." *Id.* at 1120, 1124 (quoting *St. Louis, I. M. & S. Ry. Co. v. Williams*, 251 U.S. 63, 67 (1919)). Indeed, the court cautioned "that only very rarely will an aggregated statutory damages award meet the exacting *Williams* standard and exceed constitutional limitations where the per-violation amount does not." *Id.* at 1123. The core of the analysis rests on the point when these types of aggregated awards transform into something punitive: "constitutional due process limitations are more likely to apply" in circumstances "[w]here a statute's compensation and deterrence goals are so greatly overshadowed by punitive elements." *Id.* at 1122.

NAPA's brief is devoid of this detailed analysis, and the Court should reject the invitation to strike down CEMA's damage provisions on due process grounds at the pleading stage in a case that currently involves a single plaintiff. This procedural posture cannot possibly present "the most egregious of circumstances" under any test.

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS - 14
(2:25-cv-02280-RAJ)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

# IV.   CONCLUSION

The State respectfully requests that the Court deny NAPA's constitutional challenges to CEMA.

DATED this 17th day of February, 2026.

NICHOLAS W. BROWN
Attorney General

/s/ Robert Hyde
ROBERT HYDE, WSBA #33593
BEN BRYSACZ, WSBA #54683
CLAIRE MCNAMARA, WSBA #50097
Assistant Attorneys General
Attorneys for Plaintiff-Intervenor State of
Washington
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
206-474-7744
robert.hyde@atg.wa.gov
ben.brysacz@atg.wa.gov
claire.mcnamara@atg.wa.gov

*I certify that this memorandum contains 4,888 words, in compliance with the Local Civil Rules.*

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS - 15
(2:25-cv-02280-RAJ)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744